## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| BATH JUNKIE BRANSON, L.L.C. and GLORIA R. ARNEY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 04-3421-CV-S-RED ) |
| BATH JUNKIE, INC., et al. | ) ) |
| Defendants. | ) ) |

### ORDER

Now before the Court are defendants' Motion for Summary Judgment (#91) and plaintiffs' Motion for Partial Summary Judgment (#92). After careful consideration, defendants' motion is **GRANTED in part and DENIED in part** and plaintiffs' motion is **DENIED**.

### BACKGROUND

In the summer of 2000, plaintiffs began negotiating with Bath Junkie, Inc. to purchase a Bath Junkie franchise in Branson, Missouri. During the negotiations, Judy Zimmer, Bath Junkie, Inc.'s CEO, hand-delivered a Uniform Franchise Offering Circular ("UFOC") to plaintiff Gloria Arney. The UFOC contained financial information and an auditor's report. The auditor's report noted that "the Company has a net capital deficiency that raises substantial doubt about its ability to continue as a going concern." The financial documents disclosed $54,183 in gross sales during the first four months of the year 2000. Ms. Arney claims that she confronted Ms. Zimmer in person about the apparent financial problems revealed in the UFOC, and Ms. Zimmer responded by claiming that the financial information related only to Bath Junkie's Eureka Springs store which had been closed during January and part of February. Ms. Zimmer claims that she did not make these statements to Ms. Arney, but she admits that Bath Junkie's Eureka Springs store did not have gross sales of

$54,183 during the first four months of the year 2000. Ms. Arney also claims that Ms. Zimmer and other Bath Junkie, Inc. representatives frequently commented that she was "going to be driving a truckload of money away . . . every year" and that she was "not going to have to worry about paying . . . bills." Ms. Arney also claims that she and Ms. Zimmer orally agreed that (1) plaintiffs would pay Bath Junkie, Inc. $25,000 plus royalties, (2) Bath Junkie, Inc. would provide plaintiffs with a Bath Junkie franchise in Branson, Missouri, and (3) Springfield, Missouri, would be within the franchise's exclusive territory.[1]

Relying on these representations and agreements, plaintiffs purchased the franchise and opened a Bath Junkie store in Branson, Missouri, in October 2000. While the parties exchanged various versions of a proposed written franchise agreement, no written agreement was executed by the parties. After purchasing the franchise, plaintiffs learned that Bath Junkie, Inc. sold a franchise in Springfield, Missouri, to another franchisee.

Plaintiffs paid Bath Junkie, Inc. $25,000 for the franchise and paid Bath Junkie, Inc. at least $29,971.12 in royalties until plaintiffs dissociated from Bath Junkie, Inc. in June 2004 and began operating the store independently. Plaintiffs did not make the level of profits they expected from the Branson franchise.

On September 30, 2004, plaintiffs filed a nine count complaint against defendants. The first count is derivative of the other counts and indicates that the corporate defendants should be liable for the acts of the individual defendants. Counts two, four, and five allege that defendants either negligently or fraudulently misrepresented the profits plaintiffs could expect to obtain from the

---

[1]Ms. Arney claims that she and Ms. Zimmer also agreed upon additional terms. Because plaintiffs have produced sufficient evidence to establish a breach of these basic terms of the agreement, the Court need not examine the other alleged terms.

2

Branson Bath Junkie franchise. Count three alleges that defendants breached an oral contract with plaintiffs. Count six alleges unjust enrichment. Count seven requests an accounting, constructive trust, and restitution. Count eight alleges that defendants violated Missouri's Business Opportunities Act, and count nine claims that defendants are liable for RICO violations. Plaintiffs moved for summary judgment on their Business Opportunities Act claim, and defendants moved for summary judgment on all counts of plaintiffs' complaint.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323-24 (emphasis in original). The nonmoving party "may not rest upon . . . mere allegations or denials." FED. R. CIV. P. 56(e). "[T]he adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

## DISCUSSION

### I. Fraudulent and Negligent Misrepresentation

Defendants first argue that plaintiffs cannot establish fraudulent or negligent misrepresentation. "The elements of fraudulent misrepresentation under Missouri law are: (1) the representation is false; (2) the representation is material; (3) the speaker knows of the

3

representation's falsity; (4) the speaker intends the hearer to act on the representation 'in the manner reasonably contemplated'; (5) the hearer is ignorant of the representation's falsity; (6) the hearer relies on the representation's truth; (7) the hearer has a right to rely on the representation; and (8) the hearer is consequently and proximately injured." *Cordry v. Vanderbilt Mortg. & Finance, Inc.*, 445 F.3d 1106, 1111-12 (8th Cir. 2006) (citing *Joel Bianco Kawasaki Plus, Inc. v. Meramec Valley Bank,* 81 S.W.3d 528, 536 (Mo. 2002)). "Negligent misrepresentation differs primarily in that the speaker must only fail 'to exercise reasonable care or competence in obtaining or communicating th[e] information,' rather than know of its falsity." *Id.* (quoting *M & H Enters. v. Tri-State Delta Chems., Inc.,* 35 S.W.3d 899, 904 (Mo. Ct. App. 2001)).

Plaintiffs first claim that defendants' statements that Ms Arney was "going to be driving a truckload of money away . . . every year" and that she was "not going to have to worry about paying . . . bills" were fraudulent or negligent misrepresentations. "[P]redictions and projections regarding the future profitability of a business or investment cannot form a basis for fraud as a matter of law." *Arnold v. Erkmann*, 934 S.W.2d 621, 627 (Mo. Ct. App. 1996); *see also Trotters Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 940-41 (Mo. Ct. App. 1996) (dealing with profit projections in the sale of a franchise). Defendants' statements were predictions of the franchise's future profitability. They are mere puffery and do not support plaintiffs' misrepresentation claims.

Plaintiffs also claim that Ms. Zimmer's statement that the financial documents contained information only about the Eureka Springs Bath Junkie store was a fraudulent or negligent misrepresentation. Ms. Zimmer admits that the statement would have been false if it had been made. The representation was clearly material in that the financial stability of the franchisor and comparable franchisees is a key consideration in determining whether to purchase a franchise. Ms.

4

Zimmer admits that she knew the financial information about the Eureka Springs store when she gave Ms. Arney the UFOC. Accordingly, if Ms. Zimmer said the documents accurately reflected Eureka Spring's financial information, she either knew or should have known that the statement was false. It is uncontested that Ms. Zimmer provided the documents and held discussions with Ms. Arney in efforts to persuade her to purchase the Branson franchise. Ms. Arney claims that she did not know that the financial documents contained data unrelated to the Eureka Springs store, and she relied on Ms. Zimmer's representation when deciding to purchase the Branson franchise. Plaintiffs then paid more than $50,000 in fees and royalties to Bath Junkie, Inc. in exchange for the Branson franchise. Plaintiffs have presented evidence sufficient to establish each element of fraudulent and negligent misrepresentation. Genuine issues of material fact remain on counts two, four, and five of plaintiffs' complaint, and summary judgment is not appropriate on those counts.

## II.     Breach of Contract

### A.     *Statute of Frauds*

Defendants argue that plaintiffs' breach of contract claims are barred by applicable statutes of frauds. Defendants first claim that section 432.010 of the Missouri Revised Statutes bars plaintiffs' oral contract claim because the contract would not likely have been performed within one year. However, "the possibility that a contract may be performed within one year is sufficient to avoid the statute of frauds." *Want v. Century Supply Co.*, 508 S.W.2d 515, 516 (Mo. Ct. App. 1974). Defendants produced no evidence that the parties agreed that the relationship would last more than a year. *Cf. Midwest Energy, Inc. v. Orion Food Systems, Inc.*, 14 S.W.3d 154, 157 (Mo. Ct. App. 2000) (holding statute applicable to franchise agreement where unexecuted written agreement indicated term would be more than one year). Section 432.010 does not apply absent such evidence.

5

Section 400.1-206 of the Missouri Revised Statutes must also be considered in this case. It states that contracts for the sale of personal property for more than $5,000 are not enforceable without a signed, written memorandum of the agreement. The predominant asset involved in the parties' agreement is the sale of a franchise for $25,000 plus regular royalty payments. Franchises are personal property covered by the statute. *Ackerman Buick, Inc. v. General Motors Corp.*, 66 S.W.3d 51, 60 (Mo. Ct. App. 2001).

Certain exceptions to the statute of frauds also must be considered. Among these are exceptions dealing with plaintiffs' partial or complete performance under the agreement. "[T]he statute of frauds has no application where there has been a full and complete performance of the contract by one of the contracting parties, and the party so performing may sue on the contract in a court of law." *Koman v. Morrissey*, 517 S.W.2d 929, 935-36 (Mo. 1975) (citing *Trimmer v. Short*, 492 S.W.2d 179, 184 (Mo. Ct. App. 1973)). If plaintiffs <u>completely</u> performed, the statute of frauds will not bar recovery on their action at law for breach of contract. *See id.* If plaintiffs <u>partially</u> performed, the statute of frauds might bar plaintiffs' action at law, but plaintiffs may obtain equitable relief. *See Stoetzel v. Continental Textile Corp. of America*, 768 F.2d 217, 222-23 (8th Cir. 1985). Neither party has established whether plaintiffs' performance was complete or partial.

Based upon the incomplete evidence and arguments presented by the parties in their motions and responses, the Court is not able to enter summary judgment on defendants' statute of frauds defense.

### B. *Prima Facie Case*

Defendants also claim that plaintiffs cannot establish the underlying elements of their breach of contract claim. "To make a submissible case on a claim of breach of contract, the party alleging

6

a breach must prove: (1) a valid contract exists; (2) the rights and obligations of each party; (3) a breach; and (4) damages." *Emerald Pointe, L.L.C. v. Jonak*, 202 S.W.3d 652, 664 (Mo. Ct. App. 2006). Ms. Arney testified that she and Ms. Zimmer agreed that Bath Junkie, Inc. would sell plaintiffs a franchise that included Springfield, Missouri, in its exclusive territory, and plaintiffs would pay Bath Junkie, Inc. $25,000 plus royalties for the franchise. Defendants admit that they sold a franchise for a store in Springfield, Missouri, to a different investor without consulting plaintiffs. Ms. Arney testified that the Springfield store took away approximately ten to fifteen percent of plaintiffs' customers. Genuine issues of material fact remain on plaintiffs' breach of contract claim, and summary judgment is not appropriate on count three of plaintiffs' complaint.

### III. Unjust Enrichment

Defendants next argue that plaintiffs cannot establish an unjust enrichment claim. "Unjust enrichment occurs where a benefit is conferred upon a person in circumstances in which retention by him of that benefit without paying its reasonable value would be unjust." *Cridlebaugh v. Putnam County State Bank of Milan,* 192 S.W.3d 540, 543 (Mo. Ct. App. 2006). "The elements of unjust enrichment are: (a) a benefit conferred by one party on another; (b) appreciation by the receiving party of the fact that what was conferred was a benefit; and (c) acceptance and retention of the benefit that would render that retention inequitable." *Id.* Ms. Arney testified that plaintiffs paid Bath Junkie, Inc. more than $50,000 based upon Ms. Zimmer's misrepresentations about the financial information contained in the UFOC. Plaintiffs have produced evidence sufficient to create a genuine issue of material fact on their unjust enrichment claim, and summary judgment is not appropriate on count six of plaintiffs' complaint.

### IV. Equitable Remedies

7

Defendants also argue that summary judgment is appropriate on count seven of plaintiffs' complaint which requests imposition of a constructive trust, an accounting, and restitution.

Plaintiffs' request for a constructive trust is closely connected with their misrepresentation claims. "A constructive trust is a method by which a court exercises its equitable powers to 'remedy a situation where a party has been wrongfully deprived of some right, title, benefit or interest in property as a result of fraud." *Bueneman v. Zykan,* 181 S.W.3d 105, 112 (Mo. Ct. App. 2005). Because plaintiffs present a submissible fraud case, and because the constructive trust theory simply provides an equitable remedy when property is fraudulently obtained, plaintiffs have produced sufficient evidence to maintain their constructive trust claim.

Plaintiffs' request for an equitable accounting is connected to their request for a constructive trust. To establish entitlement to an accounting, plaintiffs must prove (1) a need for discovery of the information relevant to the trust property, (2) that the accounts are complicated, (3) that a fiduciary relationship exists, and (4) that plaintiffs do not have an adequate remedy at law. *Cook v. Martin,* 71 S.W.3d 677, 679 (Mo. Ct. App. 2002). Plaintiffs need information regarding the money they paid Bath Junkie, Inc. because they seek to recover the money or proceeds of the money on a constructive trust theory. The accounts holding this money are complicated in that many transactions with this money have purportedly taken place. If the Court imposes a constructive trust over the money, a fiduciary relationship would exist between plaintiffs and Bath Junkie, Inc. Courts at law do not provide a remedy for plaintiffs to obtain the necessary information. Accordingly, plaintiffs have established a submissible equitable accounting claim.

Plaintiffs' request for restitution is intertwined with their unjust enrichment claim. "A person who has been unjustly enriched at the expense of another is compelled to make restitution to the

8

other." *Smith v. Smith,* 17 S.W.3d 592, 597 (Mo. Ct. App. 2000). Because plaintiffs established a submissible claim for unjust enrichment, they have presented sufficient evidence to support a restitution remedy. Summary judgment is not appropriate on count seven of plaintiffs' complaint.

## V.      Business Opportunities Act

Defendants argue that plaintiffs do not have a submissible claim under Missouri's Business Opportunities Act. Plaintiffs argue that not only have they presented sufficient evidence on their Business Opportunities Act claim, but they are entitled to summary judgment as a matter of law on that claim.

Sections 409.1000 *et seq.* of the Missouri Revised Statutes contain Missouri's Business Opportunities Act. This act provides a private right of action to any purchaser of a "business opportunity" when the seller violates the provisions of the act. MO. REV. STAT. § 409.1006. A seller violates the act by "misrepresent[ing] a material fact or creat[ing] a false or misleading impression in the sale." *Id*. § 409.1003. A "business opportunity" is defined as something sold to a purchaser to enable the purchaser to start a business that the seller represents "is free from risk or certain to produce profits." *Id*. § 409.1000.

Plaintiffs have produced evidence establishing that Bath Junkie, Inc. represented that plaintiffs were certain to make profits from the Branson Bath Junkie franchise. Defendants deny making these statements, so a genuine issue of material fact exists regarding whether the Branson Bath Junkie franchise was a "business opportunity." By presenting a submissible fraud claim, plaintiffs also presented sufficient evidence that Bath Junkie, Inc. misled them about the sale.

Defendants argue, however, that a one year statute of limitations applies pursuant to section 409.1006(1). Section 409.1006(1) permits a business opportunity purchaser to rescind its contract

9

under certain circumstances if the rescission occurs within one year after the contract is executed. However section 409.1006(2) provides "any purchaser injured by a violation of [this act] or by the business opportunity seller's breach of a contract subject to [this act] or any obligation arising therefrom, may bring an action for recovery of damages, including reasonable attorney's fees." Plaintiffs are clearly suing under subsection 2 of section 409.1006, and the one year limitation period does not apply.

Accordingly, genuine issues of material fact remain on plaintiffs' Business Opportunities Act claim, and summary judgment is not appropriate on count eight of plaintiffs' complaint.

**VI.    Civil RICO**

Defendants next argue that plaintiffs cannot prove their civil RICO claim. "To establish a RICO violation, a plaintiff must allege and prove (1) the existence of an enterprise; (2) defendant's association with the enterprise; (3) defendant's participation in predicate acts of racketeering; and (4) defendant's actions constitute a pattern of racketeering activity." *Sinclair v. Hawke*, 314 F.3d 934, 943 (8th Cir. 2003).

Plaintiffs claim that defendants' predicate act of racketeering activity was mail and wire fraud. To prove mail or wire fraud, plaintiffs must establish (1) the existence of a plan or scheme to defraud, (2) that it was foreseeable that the scheme would cause the mails or wires to be used, and (3) that the use of the mails or wires was for the purpose of carrying out the fraudulent scheme. *Demerath Land Co. v. Sparr*, 48 F.3d 353, 355 (8th Cir. 1995). Plaintiffs have produced no evidence of the contents of any messages sent through the mail or wires in furtherance of defendants' purported scheme to defraud. All documents related to the alleged fraud were hand delivered, and all relevant conversation occurred in person.

10

To establish a pattern of activity, plaintiffs must prove that defendants committed "'at least two acts of racketeering activity.'" *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 406 (8th Cir. 1999) (quoting 18 U.S.C. § 1961(5)).  Plaintiffs have established only that they were misled about the financial information contained in the UFOC during a meeting with Ms. Zimmer. They have not presented sufficient evidence to prove the pattern element of their civil RICO claim.[2]

Plaintiffs have not presented evidence sufficient to establish a submissible civil RICO claim, and summary judgment is appropriate on count nine of plaintiffs' complaint.

## VII. Claims Against Individual Defendants

Defendants finally argue that plaintiffs have not established claims against Jocelyn Morelli, Steven Kay, or Jon Zimmer.  All statements supporting plaintiffs' misrepresentation and unjust enrichment claims were uttered by Judy Zimmer only.  Plaintiffs' contract was with Bath Junkie, Inc., so the individual defendants are not liable on plaintiffs' claim for breach of contract. Missouri's Business Opportunities Act can be violated only by the seller of the business opportunity, and Bath Junkie, Inc. sold plaintiffs the Bath Junkie franchise.  Accordingly, plaintiffs have not established that Jocelyn Morelli, Steven Kay, or Jon Zimmer are liable to plaintiffs.  Summary judgment is appropriate on all plaintiffs' claims against those individuals.

### CONCLUSION

Plaintiffs' Motion for Partial Summary Judgment (#92) is **DENIED**.  Defendants' Motion for Summary Judgment (#91) is **GRANTED in part and DENIED in part**.  To the extent defendants' motion requests summary judgment on count nine of plaintiffs' complaint, defendants'

---

[2]Because plaintiffs have not established a pattern of racketeering activity, the Court need not determine whether genuine issues of material fact remain on the other elements of plaintiffs' civil RICO claim.

11

motion is **GRANTED** and summary judgment is hereby entered in favor of defendants and against plaintiffs on count nine of plaintiffs' complaint. To the extent defendants' motion requests summary judgment on claims against Jocelyn Morelli, Steven Kay, or Jon Zimmer, defendants' motion is **GRANTED** and summary judgment is hereby entered in favor of defendants and against plaintiffs on plaintiffs' claims against Jocelyn Morelli, Steven Kay, or Jon Zimmer. To the extent defendants' motion seeks summary judgment on other counts and claims, the motion is **DENIED**.

**IT IS SO ORDERED.**

DATE: December 21, 2006  */s/ Richard E. Dorr*
RICHARD E. DORR, JUDGE
UNITED STATES DISTRICT COURT